IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher R. Bruggeman, | : | |
| Plaintiff | : | Civil Action 2:09-cv-00381 |
| v. | : | Judge Holschuh |
| Terry Collins, Director, Ohio Department of Rehabilitation and Correction, *et al.*, | : | Magistrate Judge Abel |
| | : | |
| Defendants | | |

# Report and Recommendation

Plaintiff Christopher R. Bruggeman, an inmate at the Madison Correctional Institution, brings this action under 42 U.S.C. § 1983 against the Director of the Ohio Department of Rehabilitation and Correction and members of the Ohio Adult Parole Authority in their official capacity asserting violations of the Ex Post Facto clause and his substantive and procedural due process rights guaranteed by the Fourteenth Amendment of the United States Constitution. This matter is before the Magistrate Judge on defendants' April 16, 2010 motion for summary judgment (doc. 32).

**I.  Allegations in the Complaint**

In November 1993, Christopher R. Bruggeman was convicted of three counts of gross sexual imposition in violation of section 2907.05 of the Ohio Revised Code, a third degree felony. Compl. ¶ 8. On December 17, 1993, Bruggeman was sentenced to serve

indeterminate sentences of not less than four nor more than ten years on each count. *Id.* at ¶ 9. The sentences were ordered to be served consecutively for an aggregate prison term of twelve to thirty years. *Id.*

In March 1998, the Ohio Adult Parole Authority ("OAPA") promulgated new parole eligibility guidelines, which were retroactively applied to prisoners serving indeterminate sentences. *Id.* at ¶ 10. The application of these guidelines placed plaintiff in "category ten" as if he had been convicted of a first degree felony. An October 23, 2001 document demonstrates that defendants made an upward departure from category five to ten in part based on allegations of that plaintiff engaged in sexual misconduct in Louisiana. *Id.* at ¶ 12. Defendants also relied on a statement that plaintiff made during the presentence investigation. *Id.*

In 1996, the Ohio General Assembly enacted sections 5149.10 and 5149.101 of the Ohio Revised Code. The complaint alleges that these statutes significantly changed the procedures by which parole eligibility hearings were conducted by requiring victims of crimes, family members of victims, and members of victims rights group to be appointed to the OAPA. *Id.* at ¶¶ 13-14.

On July 1, 2007, defendants modified the parole guidelines and applied the changes retroactively. *Id.* at ¶ 15. On November 25, 2008, defendants applied the 2007 guidelines, and plaintiff was denied parole. *Id.* at ¶ 16. His sentence was continued until 2013. *Id.* The complaint alleges that the retroactive application of the 2007 guidelines placed him in category 11, and he will have served 240 months before being considered

for parole again. *Id.* The complaint further alleges that he has been required to serve 132 months beyond his true guideline. *Id.* at ¶ 18.  According to the complaint, the actions of defendants constitute willful violations of the Ex Post Facto clause and the substantive and due process rights afforded by the Fourteenth Amendment.

   II.     **Arguments of the Parties**

      A.     **Defendants**

Defendants argue that inmates have no constitutionally protected liberty interest in parole or early release, and Bruggeman's argument that Ohio Revised Code §§ 5149.10 and 5149.101 violate his right to due process fails as a result. Defendants also argue that to the extent that plaintiff is arguing that he has been denied an impartial parole tribunal, his claim fails because the parole board members have neither a pecuniary interest in the outcome of his parole hearings nor are they dually engaged in both adjudicative and executive functions.

Defendants maintain that Ohio Revised Code §§ 5149.10 and 5149.101 promote a compelling state interest, are procedural in nature, and do not have a substantive impact on an inmate's sentence length or eligibility for parole. Plaintiff's allegation of bias in the spirit of revenge is an insufficient basis for disqualifying parole board members. According to defendants the Ex Post Facto Clause does not prohibit the retroactive application of procedural laws. To violate the Ex Post Facto Clause, a law must create a sufficient risk of increased punishment above and beyond some ambiguous disadvantage to an inmate.

Defendants also contend that plaintiff's claim for violation of the Ex Post Facto clause is moot because the OAPA rescinded the 2007 guidelines as of April 1, 2010. The decision to rescind the guidelines eliminates any case or controversy with respect to how the guidelines were once applied and renders the Court unable to grant plaintiff the relief he requests. Plaintiff has no basis for asserting that the 2007 guidelines will injure him in the future. An inmate's suitability for release on parole will remain based on the criteria listed in provisions of the Ohio Revised Code and the Ohio Administrative Code that have remained essentially unchanged since 1975.

Defendants further argue that plaintiff received a meaningful parole hearing as required under Ohio law. Under Ohio law, an inmate is denied a meaningful parole hearing when parole eligibility is determined based upon (1) an incorrect offense category score; (2) an inmate's offense category score nominally corresponds with the convicted offense but is elevated based on a determination that the inmate committed a distinct offense for which he was not convicted; or (3) an inmate's offense category correctly corresponds with the offense of conviction but the lowest possible range on the guideline's chart is a longer sentence than the inmate' earliest statutory parole eligibility date. None of these circumstances apply to plaintiff's circumstances.

### B. Plaintiff

Plaintiff argues that despite defendants' assertion that the 1998-2007 guidelines have been replaced, his claims are not moot. He maintains that he is still under the ambit of the 1998-2007 guidelines. Plaintiff contends that the parole guidelines have

unexpectedly increased minimum sentence. Plaintiff maintains that despite his conviction for three counts of gross sexual imposition perpetrated against one victim, felonies of the third degree, defendants placed him in to the category for rape, a first degree felony in 2001 and 2008. Plaintiff bases his argument on the fact that although the category 5 is marked on the form, he will have served 242 months before his next parole hearing. *See* Exh. D of Pl.'s Compl. According to plaintiff, the 1998-2007 guidelines, on their face, altered the definition of the statutory crimes of conviction by assigning harsher categories to harsher time-grids and increasing the statutory minimum of 8 years into 15 years in 2001 and to 20 years in 2008.

      Plaintiff compares the 1998-2007 guidelines with the earlier matrix guidelines. Under the matrix guidelines, there were no "categories".  Parole eligibility was based on the statutory crimes of conviction and degrees thereof. Suitability for parole was determined by a "risk score," which was abolished by the 1998-2007 guidelines.

      Plaintiff also argues that Ohio Revised Code §§ 5120.60, 5149.10, and 5149.101 violate the Ex Post Facto Clause because they present a significant risk of increasing his punishment by denying him an impartial parole tribunal.

      Plaintiff further argues that his substantive and procedural due process rights have been violated because the decisionmakers were engaged in both adjudicative and executive functions in violation of the principle of separation of powers. Defendants have the authority to implement and enforce their own rules, polices, regulations, and guidelines, resulting in the performance of both executive and adjudicatory functions.

5

Plaintiff also maintains that defendants have a pecuniary interest in denying him parole.

### III. Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by

jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

### IV. Discussion

#### A. Due Process

A plaintiff bringing a § 1983 claim for violation of his right to procedural due process must show that the state deprived him of a constitutionally protected interest in life, liberty, or property without due process of law. *Zinermon v. Burch*, 494 U.S. 113 (1990). Under the Fourteenth Amendment, the state may not interfere with a constitutionally cognizable liberty or property interest without due process of law. *Kentucky Dep't. of Corr. v. Thomps*, 490 U.S. 454, 460 (1989). The United States Supreme Court, however, has held that there is no constitutional right of a convicted person to be paroled before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). The state of Ohio has created a completely discretionary parole system, and, as a result, under an Ohio inmate has no liberty interest in parole eligibility under Ohio law. Ohio Rev. Code § 2967.03; *Jago v. Van*

*Curen*, 454 U.S. 14, 20-21 (1981); *Inmates of Orient Corr. Inst. v. Ohio State Parole Auth.*, 929 F.2d 233, 234-37 (6th Cir. 1991).

Here, Bruggeman challenges the procedures governing the parole board rather than the denial of parole itself. Bruggeman maintains that his due process rights have been violated because he has been denied an impartial tribunal by Ohio Revised Code §§ 5149.10 and 5149.101. Because plaintiff has no protected liberty interest in being released on parole prior to the expiration of his sentence, his right to due process has not been infringed by defendants. Where no liberty interest is at stake, plaintiff is not entitled to due process.

    B.  Ex Post Facto Clause

      1.  1998 and 2007 Parole Guidelines

In *Michael v. Ghee*, 498 F.3d 372 (6th Cir. 2007), the Sixth Circuit Court of Appeals described Ohio's new parole guidelines, enacted by Senate Bill 2:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and a maximum sentence. An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior. Parole decisions were delegated to the Ohio Adult Parole Authority ("OAPA"). It determined when release was appropriate for each inmate. In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. Under the new law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge. The new system does not apply retroactively to Ohio inmates sentenced under the former sentencing scheme.
>
> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996. The guidelines are similar to the

> guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence.

*Id*. at 373-74 (citations omitted). The *Michael* court found that an inmate can challenge the retroactive application of the 1998 Ohio guidelines where they create a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. at 384, quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000).

> Plaintiffs can satisfy this burden in one of two ways. First, plaintiffs can establish an ex post facto violation if they can show that the guidelines, on their face, show a significant risk of increased incarceration. Second, when the guidelines do not by their own terms show a significant risk, plaintiffs "must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]."

*Michael*, 498 F.3d at 384, quoting *Garner*, 529 U.S. at 255. However, the "focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage', [...] but on whether [the] change [...] increases the penalty by which a crime is punishable." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995). *See also Foster v. Booker*, 595 F.3d 353, 362 (6th Cir. 2010).

Ohio's parole system grants considerable decision-making discretion to the parole board. Instead of a deterministic scheme compelling certain results based upon a

10

particular crime and particular time served, it instructs the parole board in what factors it shall take into account, and then grants it the authority to make its own determination as to whether an inmate should not be released.  One such possible determination is that "[t]here is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society." (*Id.*, quoting O.R.C. §5120:1-1-07(A)(2)).  In *Foster v. Booker*, the Sixth Circuit Court of Appeals addressed a similar challenge to Michigan's parole system, which had changed in 1992 to implement tougher standards such as less frequent hearings.  The *Foster* court found, however:

> To the extent that plaintiffs have shown they face a significant risk of increased punishment under the new parole regime, plaintiffs have not shown that this risk is attributable to statutory changes to the parole process and not to a change in the way the Board legitimately exercises its discretion.  The decision whether to grant parole has always been within the Board's discretion. [...]
> Despite the fact that the scope of the Board's discretion has remained the same, plaintiffs argue that, in practice, the new Board applied a harsher standard than the old Board when deciding whether to grant parole.  However, plaintiffs' contentions do not make out an ex post facto violation.
> If the Parole Board decided within its discretion to get tougher, that could hardly amount to an ex post facto violation as long as it was within the Parole Board's discretion to get tougher.

595 F.3d at 362.

Plaintiff argues that the application of the 1998-2007 parole guidelines has unexpectedly increased his minimum sentence. Plaintiff maintains that defendants placed him in to the category for rape, a first degree felony in 2001 and 2008. Plaintiff bases his argument on the fact that although the category 5 is marked on the form, he will have served 242 months before his next parole hearing. *See* Exh. D of Pl.'s Compl. According to plaintiff, the 1998-2007 guidelines increased the statutory minimum of 8 years into 15 years in 2001 and to 20 years in 2008.  Plaintiff maintains that under the matrix guidelines, there were no "categories".  Parole eligibility was based on the statutory crimes of conviction and degrees thereof. Suitability for parole was determined by a "risk score," which was abolished by the 1998-2007 guidelines.

In 2008, the parole board denied Bruggeman parole based on the determination that he was not suitable for release at that time. Plaintiff was not considered suitable for release based on the nature of the offense involving a child victim and his violation of parental trust. The parole board also noted that his institutional conduct had only been "fair" and that his institutional programming was "poor." It was within the discretion of the parole board to determine that plaintiff was not suitable for parole based on the nature of his crime and victim regardless of what changes were made to the parole guidelines or when he had been sentenced.

Furthermore, simply because his period of incarceration is beyond the minimum time served does not mean that he was entitled to release on parole. Bruggeman maintains that he has served 132 months beyond his guideline range. However

12

Bruggeman was sentenced to indeterminate sentences of not less than four nor more than ten years on each count, which equals 48 to 360 months. Bruggeman will have served only 240 months when he is next considered for parole.  Bruggeman is not entitled to release at the expiration of his minimum sentence, and, as of yet, Bruggeman has not served his maximum sentence. The parole board is not obligated to release him prior to him the expiration of his maximum sentence. Plaintiff, therefore, has not demonstrated that 1998-2007 changes to the parole guidelines, on their face, show a significant risk of increased incarceration, nor has he come forth with any evidence demonstrating that retroactive application of these statutory provisions have resulted in a longer period of incarceration than the previous rule.

### 2. Victims' Rights Statutes

Plaintiff argues that Ohio Revised Code §§ 5120.60, 5149.10 and 5149.101 violate the Ex Post Facto Clause. Section 5120.60 of the Ohio Revised Code created the office of victims' services within the division of parole and community services. The office of victims' services provides assistance to victims of crime, victims' representatives, and members of the victim's family concerning the policies and procedures of the department of rehabilitation and correction and the status of offenders. The office also assists victims in the parole department about problems with offenders under the supervision of the adult parole authority or confined in state correctional institutions under the department's jurisdiction. The office is also charged with identifying victims' issues and making recommendations to the parole board. Ohio Rev. Code § 5120.60

13

>Section 5149.10 provides in relevant part:
>
>Except as otherwise provided in division (B) of this section, no person shall be appointed a member of the board who is not qualified by education or experience in correctional work, including law enforcement, prosecution of offenses, advocating for the rights of victims of crime, probation, or parole, in law, in social work, or in a combination of the three categories.
>(B) The director of rehabilitation and correction, in consultation with the governor, shall appoint one member of the board, who shall be a person who has been a victim of crime or who is a member of a victim's family or who represents an organization that advocates for the rights of victims of crime.

Ohio Rev. Code § 5149.10(A) & (B). Section 5149.101 gives certain crime victims, their families, and their representatives the ability to request a full parole board hearing concerning the proposed parole or re-parole of the person who committed the crime. Upon receipt of such a request, "the board shall hold a full board hearing." Ohio Rev. Code 5149.101(A)(2). At that hearing, these individuals, as well as the prosecuting attorney, law enforcement officials, and the judge who imposed the original sentence, may also give testimony or submit written statements. Ohio Rev. Code 5149.101(B). Bruggeman maintains that section 5149.101 is not neutral on its face. Instead, he maintains that the statute is adversarial and punitive. Plaintiff further argues that Ohio Revised Code § 5149.101 violates his due process rights because it denies him the right to be present and be heard during a "full board hearing."

The Ex Post Facto Clause prohibits the enactment of any law that would retroactively alter the definition of a crime or increase the punishment for criminal acts. *Collings v. Youngblood*, 497 U.S. 37, 43 (1990). To determine whether a legislative change

14

violates the Ex Post Facto Clause, a court must inquire whether the change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995).

In *Garner v. Jones*, 529 U.S. 244 (2000), the Supreme Court consider an ex post facto challenge to the retroactive application of Georgia regulation that permitted the parole board to extend the interval between parole hearings. Although the Supreme Court held that retroactive application of the regulation did not pose a significant risk of lengthening the term of imprisonment, it noted that the exercise of discretion in parole considerations did not insulate the state from ex post facto violations. *Id.* at 253. The relevant inquiry is whether the new guidelines present a significant risk of increasing the plaintiff's amount of time actually served. *Id.* at 255 ("When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the current rule.")

Here, plaintiff has failed to come forth with any evidence demonstrating that retroactive application of these statutory provisions will result in a longer period of incarceration than the previous rule. This Court has previously found that the retroactive application of Ohio's victims' rights statutes are merely procedural and do not increase a prisoner's punishment. *See Ridenour v. Collins*, 692 F. Supp. 2d 827, 837

15

(S.D. Ohio 2010); *Clumm v. Warden, Chillicothe Corr. Inst.*, 2008 WL 4346797 (S.D. Ohio Sept. 18, 2008).

### V.     Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants' April 16, 2010 motion for summary judgment (doc. 32) be GRANTED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel<br>
United States Magistrate Judge
