IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER R. BRUGGEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>TERRY COLLINS, DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, *et al.*<br><br>    Defendant. | Case No. 2:09-cv-381<br><br>Judge Peter C. Economus<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Christopher R. Bruggeman, an inmate at the Madison Correctional Institution, brings this action under 42 U.S.C. § 1983 against the Director of the Ohio Department of Rehabilitation and Correction and members of the Ohio Adult Parole Authority in their official capacity asserting violations of the Ex Post Facto clause and his substantive and procedural due process rights guaranteed by the Fourteenth Amendment of the United States Constitution. Defendants filed a motion for summary judgment on April 16, 2010. (Dkt. 32.) In a Report and Recommendation dated August 9, 2010, the Magistrate Judge recommended that Defendants' motion for summary judgment be granted. (Dkt. 45.) This matter is before the Court on Plaintiff's September 30, 2010 objections to that Report and Recommendation. (Dkt. 51.)

I.      **Allegations in the Complaint**

In November 1993, Plaintiff was convicted of three counts of gross sexual imposition in violation of section 2907.05 of the Ohio Revised Code, a third degree felony. (Compl. ¶ 8.) On December 17, 1993, Plaintiff was sentenced to serve indeterminate sentences of not less than four nor more than ten years on each count. (Id. at ¶ 9.) The sentences were ordered to be served consecutively for an aggregate prison term of twelve to thirty years. (Id.)

In March 1998, the Ohio Adult Parole Authority ("OAPA") promulgated new parole eligibility guidelines, which were retroactively applied to prisoners serving indeterminate sentences. (Compl. ¶ 10.) The application of these guidelines placed Plaintiff in "category ten" as if he had been convicted of a first degree felony. An October 23, 2001 document demonstrates that Defendants made an upward departure from category five to ten in part based on allegations of that Plaintiff engaged in sexual misconduct in Louisiana. (Id. at ¶ 12.) Defendants also relied on a statement that Plaintiff made during the presentence investigation. (Id.)

In 1996, the Ohio General Assembly enacted Ohio Revised Code §§ 5149.10 and 5149.101. The complaint alleges that these statutes significantly changed the procedures by which parole eligibility hearings were conducted by requiring victims of crimes, victims' family members, and members of victims rights groups to be appointed to the OAPA. (Compl. ¶¶ 13–14.)

On July 1, 2007, Defendants modified the parole guidelines and applied the changes retroactively. (Compl. ¶ 15.) On November 25, 2008, Defendants denied parole to Plaintiff, applying the 2007 guidelines. (Id. at ¶ 16.) Plaintiff's sentence was continued until 2013. (Id.) The complaint alleges that the retroactive application of the 2007 guidelines placed him in category 11, and he will have served 240 months before being considered for parole again. (Id.) The complaint further alleges that he has been required to serve 132 months beyond his true guideline. (Id. at ¶ 18.) According to the complaint, Defendants' actions constitute willful violations of the Ex Post Facto clause and the substantive and due process rights afforded by the Fourteenth Amendment.

**II.     Plaintiff's Objections to the Report & Recommendation**

Plaintiff argues that the Magistrate Judge incorrectly interpreted the facts of the case and misapplied the case law. Plaintiff maintains that Defendants waived any argument that Plaintiff's claims are moot. He maintains that he is still under the ambit of the 1998-2007 guidelines and that rescinding the former guidelines has not mooted his claims.

Plaintiff also asserts that he stated a substantive and procedural due process claim under Sandin v. Connor, 515 U.S. 14 (1981). He maintains that the Magistrate Judge erred by failing to recognize the different ways a due process claim can be stated under Sandin. Plaintiff contends that his minimum sentence was unexpectedly increased in violation of Sandin.

Plaintiff further contends that he stated a claim under the Ex Post Facto claim regarding the retroactive application of the 1998-2007 parole guidelines. He maintains that the retroactive application of the guidelines altered and redefined the statutory crimes of conviction and assigned categories to time grids thereby eliminating his chance of being released after only serving his statutory minimum sentence.

Plaintiff maintains that the Magistrate Judge incorrectly applied Greenholtz and Jago to his Ex Post Facto challenges. Plaintiff further contends that he stated an Ex Post Facto claim with respect to the retroactive application of Ohio Revised Code §§ 5120.60, 5149.10, and 5149.101 when read *in pari materia*.

Finally, Plaintiff asserts that he was denied an impartial parole tribunal. He maintains that the presumption of impartiality can be rebutted by showing conflicts or some other reason for disqualification. Plaintiff maintains that he met his burden of demonstrating conflicts by showing that Defendants are either victims of crime, family members of victims of crime, or members of victims' rights advocacy groups.

**III.	Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Revis v. Meldrum, 489 F.3d 273, 279 (6th Cir. 2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury

4

or whether it is so one-sided that one party must prevail as a matter of law.'" Id., 489 F.3d at 279–80 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## IV. Discussion

### A. Due Process

A plaintiff bringing a § 1983 claim for violation of his right to procedural due process must show that the state deprived him of a constitutionally protected interest in life, liberty, or property without due process of law. Zinermon v. Burch, 494 U.S. 113 (1990). Under the Fourteenth Amendment, the state may not interfere with a constitutionally cognizable liberty or property interest without due process of law. Kentucky Dep't. of Corr. v. Thompson, 490 U.S. 454, 460 (1989). The United States Supreme Court, however, has held that there is no constitutional right of a convicted person to be paroled before the expiration of a valid sentence. Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). The Sixth Circuit Court of Appeals held, in Michael v. Ghee, 498 F.3d 372, 378 (6th Cir. 2007), that the state of Ohio has created a completely discretionary parole system, and, as a result, an Ohio inmate has no liberty interest in parole eligibility under Ohio law. Because Plaintiff has no protected liberty interest in being released on parole prior to the expiration of his sentence, his right to due process has not been infringed by Defendants. Where no liberty interest is at stake, Plaintiff is not entitled to due process.

Plaintiff asserts that Sandin v. Conner, 515 U.S. 472 (1995), identifies two different areas of inquiry into a right to due process: (1) an increase in sentence and (2) conditions of confinement:

> In light of the above discussion, we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize

5

> that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S. Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek, 445 U.S., at 493, 100 S. Ct., at 1263–64 (transfer to mental hospital), and Washington, 494 U.S., at 221–22, 110 S.Ct., at 1036–37 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483–84.

Plaintiff is mistaken. Although the Sandin Court recognized that there could be an extraordinary imposition upon an inmate "exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," the cases it cited to illustrate this principle indicate that it meant treatment of prisoners outside the ordinary relationship between prison and inmate. It cited Vitek v. Jones, 445 U.S. 480 (1980), in which a state law gave a prison physician the power to, at his discretion, involuntarily commit a prisoner to a mental hospital. Vitek (specifically noting in passing that there is no inherent constitutional right to parole) found a separate liberty interest in a prisoner not being transferred to a mental hospital without a hearing as to whether he suffered from mental illness. Id. at 488–92. The Court also cited Washington v. Harper, 494 U.S. 210 (1990), in which it held that, in a state which had set a policy permitting treatment of nonconsenting prisoners with antipsychotic drugs only where they had been found to be mentally ill and dangerous, inmates had a liberty interest in avoiding the unwanted administration of drugs. These cases did not address ordinary penological matters such as the length of sentences or eligibility for parole. Sandin, therefore, did not create a different "first due process inquiry" relating specifically to sentences, but rather recognized an exception in certain circumstances to the general rule that liberty interests are limited to freedom of restraint from conditions creating an atypical and significant hardship.

A long line of caselaw holds that there is no constitutional right to parole eligibility in a state with a completely discretionary parole system. Michael, 498 F.3d at 377–78 (citing Swihart v. Wilkinson, 209 Fed. Appx. 456 (6th Cir. 2006)). Plaintiff's claims that new parole guidelines or victims' rights statutes violate due process likewise fail for lack of a protected constitutional right.[1] Because Plaintiff has no protected liberty interest in being released on parole prior to the expiration of his sentence, his right to due process has not been infringed by Defendants. Where no liberty interest is at stake, Plaintiff is not entitled to due process.

**B.     Ex Post Facto Clause**

*1.     1998 and 2007 Parole Guidelines*

In Michael v. Ghee, 498 F.3d 372 (6th Cir. 2007), the Sixth Circuit Court of Appeals described Ohio's new parole guidelines, enacted by Senate Bill 2:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and a maximum sentence. An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior. Parole decisions were delegated to the Ohio Adult Parole Authority ("OAPA"). It determined when release was appropriate for each inmate. In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. Under the new law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge. The new system does not apply retroactively to Ohio inmates sentenced under the former sentencing scheme.
>
> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996. The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance

---

[1] Plaintiff also argues that Defendants have violated the Due Process Clause by failing to provide him with a fair and neutral decision maker. In Tamachaski v. Renico, 2001 WL 1478664 (E.D. Mich. 2001), the court determined that, if a prisoner were entitled to due process of law in the parole release decision making process, that due process of law would be violated where parole board members derived a direct pecuniary interest from decisions adverse to inmates or where parole board members engaged in both adjudicative and executive functions. Id. at *3–4. However, the Tamachaski court acknowledged that its analysis was hypothetical, because, as Michigan (like Ohio) had a discretionary parole system, prisoners were not entitled to due process of law in parole consideration decisions anyway. Id. at *2.

7

> on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence.

Id. at 373–74 (citations omitted). The Michael court found that an inmate can challenge the retroactive application of the 1998 Ohio guidelines where they create a "sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. at 384 (quoting Garner v. Jones, 529 U.S. 244, 250 (2000)).

> Plaintiffs can satisfy this burden in one of two ways. First, plaintiffs can establish an ex post facto violation if they can show that the guidelines, on their face, show a significant risk of increased incarceration. Second, when the guidelines do not by their own terms show a significant risk, plaintiffs "must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]."

Michael, 498 F.3d at 384 (quoting Garner, 529 U.S. at 255). However, the "focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage', [. . .] but on whether [the] change [. . .] increases the penalty by which a crime is punishable." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n.3 (1995). See also Foster v. Booker, 595 F.3d 353, 362 (6th Cir. 2010).

Ohio's parole system grants considerable decision-making discretion to the parole board. Instead of a deterministic scheme compelling certain results based upon a particular crime and particular time served, it instructs the parole board in what factors it shall take into account, and then grants it the authority to make its own determination as to whether an inmate should not be released. One such possible determination is that:

> There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society.

Ohio Admin. Code § 5120:1-1-07(A)(2).  In Foster v. Booker, the Sixth Circuit Court of Appeals addressed a similar challenge to Michigan's parole system, which had changed in 1992 to implement tougher standards such as less frequent hearings.  The Foster court found, however:

> To the extent that plaintiffs have shown they face a significant risk of increased punishment under the new parole regime, plaintiffs have not shown that this risk is attributable to statutory changes to the parole process and not to a change in the way the Board legitimately exercises its discretion.  The decision whether to grant parole has always been within the Board's discretion. [. . .]
>
> [. . .] Despite the fact that the scope of the Board's discretion has remained the same, plaintiffs argue that, in practice, the new Board applied a harsher standard than the old Board when deciding whether to grant parole.  However, plaintiffs' contentions do not make out an ex post facto violation.
>
> If the Parole Board decided within its discretion to get tougher, that could hardly amount to an ex post facto violation as long as it was within the Parole Board's discretion to get tougher.

595 F.3d at 362.

> The Magistrate Judge summarized Plaintiff's argument as follows:
>
> Plaintiff argues that the application of the 1998-2007 parole guidelines has unexpectedly increased his minimum sentence.  Plaintiff maintains that defendants placed him in the category for rape, a first degree felony in 2001 and 2008.  Plaintiff bases his argument on the fact that although the category 5 is marked on the form, he will have served 242 months before his next parole hearing.  See Exh. D of Pl.'s Compl.  According to plaintiff, the 1998-2007 guidelines increased the statutory minimum of 8 years into 15 years in 2001 and to 20 years in 2008.  Plaintiff maintains that under the matrix guidelines, there were no "categories."  Parole eligibility was based on the statutory crimes of conviction and degrees thereof.  Suitability for parole was determined by a "risk score," which was abolished by the 1998-2007 guidelines.

(Dkt. 45 at 12.)

In 2008, the parole board denied Plaintiff parole based on the determination that he was not suitable for release at that time.  Plaintiff was not considered suitable for release based on the nature of the offense involving a child victim and his violation of parental trust.  The parole board also noted that his institutional conduct had only been "fair" and that his institutional

9

programming was "poor." The Magistrate Judge properly concluded that it was within the discretion of the parole board to determine that Plaintiff was not suitable for parole based on the nature of his crime and victim regardless of what changes were made to the parole guidelines or when he had been sentenced.

As stated by the Magistrate Judge, simply because his period of incarceration is beyond the minimum time served does not mean that Plaintiff was entitled to release on parole. Plaintiff maintains that he has served 132 months beyond his guideline range. He was sentenced, however, to indeterminate sentences of not less than four nor more than ten years on each count, which equals 48 to 360 months. He will have served only 240 months when he is next considered for parole. Plaintiff is not entitled to release at the expiration of his minimum sentence, and, as of yet, he has not served his maximum sentence. The parole board is not obligated to release him prior to him the expiration of his maximum sentence. Therefore, Plaintiff has not demonstrated that 1998-2007 changes to the parole guidelines, on their face, show a significant risk of increased incarceration, nor has he come forth with any evidence demonstrating that retroactive application of these statutory provisions has resulted in a longer period of incarceration than the previous rule.

### 2. *Victims' Rights Statutes*

Plaintiff argues that Ohio Revised Code §§ 5120.60, 5149.10 and 5149.101 violate the Ex Post Facto Clause. Section 5120.60 of the Ohio Revised Code created the office of victims' services within the division of parole and community services. The office of victims' services provides assistance and assistance to victims of crime, victims' representatives, and members of the victim's family concerning the policies and procedures of the department of rehabilitation and correction and the status of offenders. The office also assists victims in the parole department about problems with offenders under the supervision of the adult parole authority or

10

confined in state correctional institutions under the department's jurisdiction. The office is additionally charged with identifying victims' issues and making recommendations to the parole board. Ohio Rev. Code § 5120.60.

> Section 5149.10 provides in relevant part:
>
> Except as otherwise provided in division (B) of this section, no person shall be appointed a member of the board who is not qualified by education or experience in correctional work, including law enforcement, prosecution of offenses, advocating for the rights of victims of crime, probation, or parole, in law, in social work, or in a combination of the three categories.
>
> (B) The director of rehabilitation and correction, in consultation with the governor, shall appoint one member of the board, who shall be a person who has been a victim of crime or who is a member of a victim's family or who represents an organization that advocates for the rights of victims of crime.

Ohio Rev. Code § 5149.10(A), (B). Section 5149.101 gives certain crime victims, their families, and their representatives the ability to request a full parole board hearing concerning the proposed parole or re-parole of the person who committed the crime. Upon receipt of such a request, "the board shall hold a full board hearing." Ohio Rev. Code 5149.101(A)(2). At that hearing, these individuals, as well as the prosecuting attorney, law enforcement officials, and the judge who imposed the original sentence, may also give testimony or submit written statements. Ohio Rev. Code 5149.101(B). Plaintiff maintains that § 5149.101 is not neutral on its face. Instead, he maintains that the statute is adversarial and punitive. Plaintiff further argues that § 5149.101 violates his due process rights because it denies him the right to be present and be heard during a "full board hearing."

The Ex Post Facto Clause prohibits the enactment of any law that would retroactively alter the definition of a crime or increase the punishment for criminal acts. Collings v. Youngblood, 497 U.S. 37, 43 (1990). To determine whether a legislative change violates the Ex Post Facto Clause, a court must inquire whether the change in the law "produced a sufficient risk

11

of increasing the measure of punishment attached to the covered crimes." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995).

In Garner v. Jones, 529 U.S. 244 (2000), the Supreme Court considered an ex post facto challenge to the retroactive application of Georgia regulation that permitted the parole board to extend the interval between parole hearings. Although the Supreme Court held that retroactive application of the regulation did not pose a significant risk of lengthening the term of imprisonment, it noted that the exercise of discretion in parole considerations did not insulate the state from ex post facto violations. Id. at 253. The relevant inquiry is whether the new guidelines present a significant risk of increasing a plaintiff's amount of time actually served. Id. at 255 ("When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the current rule.").

The Magistrate Judge properly concluded that Plaintiff had failed to come forth with any evidence demonstrating that retroactive application of these statutory provisions resulted in a longer period of incarceration than under the previous rules. Furthermore, this Court has previously found that the retroactive application of Ohio's victims' rights statutes are merely procedural and do not increase a prisoner's punishment. See Ridenour v. Collins, 692 F. Supp. 2d 827, 837 (S.D. Ohio 2010); Clumm v. Warden, Chillicothe Corr. Inst., 2008 WL 4346797 (S.D. Ohio Sept. 18, 2008).

**V.     Conclusion**

For the reasons stated above, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 45), **OVERRULES** Plaintiff's objections (Dkt. 51), and **GRANTS**

Defendants' motion for summary judgment (Dkt. 32). The Clerk is **DIRECTED** to enter judgment for Defendants, and this action is hereby **DISMISSED**.

**IT IS SO ORDERED.**

/s/ **Peter C. Economus - January 11, 2011**
**UNITED STATES DISTRICT JUDGE**